Mr. Esteem, you may proceed. Thank you. Good morning, your honors, and may it please the court. I intend to reserve two minutes for rebuttal, and I will keep an eye on the clock. On December 3rd, 2017, Matt Yamashita suffered serious and permanent injuries when an electronic cigarette containing an LG battery exploded in his mouth. The product was purchased in Hawaii, used in Hawaii, caused an injury in Hawaii, and ultimately necessitated medical treatment that was received in Hawaii. This product's liability lawsuit was then filed in Hawaii in state court against LG Chem and its U.S. subsidiary, LG Chem America. The case was removed to federal court by LG Chem America, and thereafter, the trial court granted LG defendants' motions to dismiss for lack of personal jurisdiction. For today's argument, I will focus on the district court's error in failing to exercise specific jurisdiction over LG Chem, a decision to be reviewed de novo, and also the district court's error in refusing to grant plaintiff jurisdictional discovery, a decision which was reviewed for abuse of discretion. The remaining arguments and issues are submitted on briefs. First and foremost, the district court erred in its minimum context analysis for specific jurisdiction by requiring plaintiff to prove that his claims could not have arisen but for LG Chem's conduct in Hawaii. But in Ford Motor Co., First Montana 8th Judicial District Court, issued after the district court's decision, the U.S. Supreme Court issued its first majority ruling in 40 years, clarifying the minimum context test and specifically disavowing the approach taken by the district court below. For this reason alone, the district court's decision should be reversed. The second prong of the minimum context analysis for specific jurisdiction has always asked whether a plaintiff's claims arise out of or relate to a non-resent defendant's claims. I'm sorry, arise out of or relate to a non-resent defendant's form of conduct. However, non-circuit's prior jurisprudence, which was relied on by the district court below, had long interpreted the second prong language to require a strict but-for test. And in disavowing the exclusive use of the strict but-for test, the U.S. Supreme Court say that the arises out of and relates to requirement must be read and be disjunctive. That is, if the claim arises out of a non-resent defendant's form of conduct, the second prong is satisfied, but the second prong is also satisfied even if it doesn't arise out of the defendant's form of conduct so long as the claim sufficiently relates to this conduct. Unfortunately, the Supreme Court did not set clear boundaries for what conduct is sufficient to satisfy this relates to requirement and chose instead to leave that to the lower courts and the courts of appeals to handle. The only guidance given by the Supreme Court is that there should be real limits placed on this relates to requirement. There have been few decisions since the Supreme Court's ruling and none that have been overly helpful in this area. For example, in the case of LNS Enterprises v. Continental Motors, submitted by appellees as supplemental authority, a case which is highly distinguishable on the facts given that Continental's only connection with Wormstate was for unaffiliated third-party service centers and Textron's connections were even weaker. The Ninth Circuit used, for illustrative purposes, a spectrum of relatedness. The Ninth Circuit said that the- Yes. What's the level of connection required for here are the batteries? LG sells some batteries in Hawaii. I guess we don't know exactly yet that's the type of batteries that was used here. But I mean, what should we look at? I mean, does it have to be the same battery? Does it could be any battery, the type of battery? Sure, in this case, relatedness, whether looking at an individual contact or the totality of the contacts should be considered on a spectrum. In the four cases, the Supreme Court considered all of Ford's contacts as relevant, even service centers, replacement parts, recall services, independent auto shops, and sales of all cars, not just the 96 Explorer and the 94 Crown Vic. And to some extent, the sheer volume of contacts, regardless of how related, is going to boost things. And that's the image of Ford, and that'll have an impact on consumers too. The Supreme Court recognized this. So circling back to your question, all of LG's contacts, perhaps even sales of petrochemicals or other products, should be given some consideration. So while some conduct may be considered stronger or weaker than other conduct, it's all still purposeful development, and it bears some relation to the claims that issue. For this hypothetical, assume there's a guy who lives in Pennsylvania, loves to drive monster trucks, he moves to Hawaii, takes the monster truck with him, and he orders these big snow tires in Hawaii. And this tire company never sells any snow tires in Hawaii for obvious reasons, but somehow he procures those snow tires. But there's a defect in snow tires, and he crashes into the ocean. Would there still be personal jurisdiction here, even though they have tires, but this tire company would never ever sell snow tires in Hawaii? So in this hypothetical, the company sells tires, but not snow tires to Hawaii? Yeah. Okay. Yes. In that case, I believe the relatedness prong would be satisfied, because just like in this case, you really have to look at the technology itself. Whether one battery relates to another product, should be considered by the court in its jurisdictional analysis. So- How do you get that out of, I mean, in Ford, the court emphasized repeatedly that, it wasn't just that they sold cars, it was that they sold, they advertised, they sold, they maintained the specific cars at issue. And in LNS, we said that Ford had emphasized that fact, and then we seem to think that that was important. So what's the basis for, your position seems to be that that's not necessary. And as long as you sell anything, that can be enough. So where does that come from? Well, that's not exactly what my argument is. In the case of tires versus snow tires, they're very similar. And in the case of, for example, the subject battery, which is a cylindrical rechargeable called 18650 battery, it's very similar to other lithium ion batteries manufactured by LG. So even if Appellee's had never sold an 18650 battery as a removable battery for e-cigarette devices in Hawaii, it should have no bearing on this court's jurisdictional analysis. The product is the battery itself. What does matter is the basic technology and chemical makeup. All the LG's batteries are so related that the very defect plaguing plaintiff's battery appears to be the same defect that has been involved in other types of LG batteries in other applications. So for example, in the reply brief, we cite the cases involving LG battery explosions in cordless vacuums, cell phones, Dell laptops, and a hoverboard. Regardless of the specific type of application or the specific format of a battery, it really should have no bearing on this court's analysis. And realistically, if this court were to require, for example, expert testimony to go to the issue of how exactly related a cylindrical battery is to the chemical makeup of a rectangular battery in a normal cell phone is, I think perhaps we may be going too far down the rabbit hole. Well, but do you have, I mean, you have evidence. I didn't think that you had alleged that they sell any consumer battery. I mean, they sell products to manufacturers of goods that include batteries, but you haven't alleged that there's any LG battery that you can walk into a store in Hawaii and find just a battery off the shelf that's an LG battery, that they don't sell anything like that, do they? We are not alleging that you can walk into a Walmart and purchase a single cylindrical battery. That doesn't mean that those batteries aren't on the shelves in Hawaii at those stores. Or any other kind of battery that LG is selling, cylindrical or, they're not selling standalone batteries to consumers in Hawaii, are they? LG Chem itself may not be, but other retailers certainly do. Prior to my smartphone, I used to have a flip phone and I went into a battery store myself and purchased a replacement rectangular LG battery for that phone. And I'm sure other consumers do the same thing even to this day. Not every battery is going to be an internal irreplaceable battery that we might find in, for example, an Apple iPhone. Council, we're talking about Hawaii as the locus here and we're talking about the Hawaii long arm statute. Are we not? Yes, we are. Yes, Your Honor. What do the Hawaii cases tell us that would be helpful in this area? Well, Hawaii case law says that personal jurisdiction comports with due process so long as there's minimum contacts with the forum state. And in this case, we're looking at a three-prong analysis for minimum contacts. There must be purposeful availment. The claims must be arising from or related to the defendant's purposeful availment. And lastly, personal jurisdiction must comport with traditional notions of fair play and substantial justice. What's your best Hawaii case? My best Hawaii case, as most specific to the issues in this case, would be a trial court case that's going on right now. It's pending in the Third Circuit of the State of Hawaii. It's Roberts versus LG Chem. The case citation was presented, I believe, with Plaintiff Appellant's original opening brief. And there, the trial court on almost identical facts as in this case, a battery had been purchased in Hawaii, used by a consumer in Hawaii, caused injury in Hawaii, and assessed a medical treatment in Hawaii. The court found personal jurisdiction and exercised personal jurisdiction over LG Chem. This is a pending case, did you say? This is a pending case before the trial court in the Third Circuit of the State of Hawaii. Well, it's not precedent yet, is it? No, Your Honor. No, it's not. Well, the reason I ask the question is that it seems to me that we're not getting clear signals from the State of Hawaii. We've got Norris versus Six Flags, and you've got Cowan. And they don't seem to be quite in sync. And I'm wondering, since this is the first case since Ford, that maybe we should certify this to the Hawaii Supreme Court and let them look at it in the context of the language of their own long-lost statute. Perhaps you should. The Supreme Court of the State of Hawaii has a strong interest in protecting the consumers in this state. And even federal court jurisprudence on minimum contacts tests and on specific jurisdiction says that we should look to the state first and foremost. And so I think, yes. I'm surprised to hear you embracing that because it seems like certification can't possibly help you. The only thing we would certify would be the state law question of how far does the long-arm statute reach. And it can't reach broader than the due process clause does. So either it extends to the limits of due process, which we'll have to determine what the limits of due process are, or it's something narrower. So it doesn't seem like certification can benefit you. Kenneth? To the extent that this court may be persuaded by the rationale employed by the Supreme Court, given that this is a matter of state importance and state sovereignty, I think it could potentially benefit us. Although I agree with you completely to the extent that due process extends insofar as it comports with due process, the issue is rightly before the federal court. Now this incident appeal involves a case with facts presented demonstrating that falls somewhere between the two extremes of the Ford Motor cases and the worldwide Volkswagen case. And that's what the LNS, that's what the Ninth Circuit Court in LNS Enterprises v. Continental said. There's this spectrum of relatedness that we have to consider. On one end, there's Ford Motor Co. with all the possible imaginable contacts and purposeful availment. On the other hand, there's worldwide where there are no contacts and no relatedness, and there's a spectrum. In this case, certainly it doesn't present the same facts that would be equivalent with Ford contacts to Minnesota and Montana, but it's certainly more numerous than the non-existent contacts that worldwide had with Oklahoma. So realistically, this appeal presents a unique opportunity for this court to set some bounds for what specific jurisdiction relatedness requirement should entail. Given the time, I will go ahead and reserve the remaining time for rebuttal. Thank you. All right. Thank you. Ms. Dallas. Good afternoon or good morning, depending on where everyone is. I'd like to first start with the question of certification to the Hawaii Supreme Court. Hawaii's long arm statute authorizes jurisdiction to the extent permitted by due process. So it's co-extensive. That's a Estego IV OSG car carriers, 33 Federal Appendix 844, and that's citing a Hawaii Supreme Court case. So I don't think there's really any reason to certify the case to the Hawaii Supreme Court. There's really no issue for the Hawaii Supreme Court to weigh in on, given that the long arm statute is co-extensive. And then moving on, I picked up from the reply brief, the appellant's reply brief. There's kind of three different theories, I think that are in play here. We have the Ford theory, where the defendant extensively and systematically serves the market. And then we have these LG Chem contacts, which largely have to do with the solar power industry and some other totally unrelated industries in Hawaii. And then we have the stream of commerce theory. And there are, I think, pretty fatal problems with all three of these different theories of specific jurisdiction, but there's a fatal flaw that runs through all three different theories. And that is each depends on an unconstitutionally broad definition of product. So I think this argument is foreclosed by Ford and by this court's recent decision in LNS Enterprises. At a sufficient level of generality, everything is related, but we're here talking about the product at issue in this lawsuit is an industrial 18650 lithium ion battery cell. It's not a battery. It's a part of the battery when it is incorporated into a battery pack with protective circuitry. So these cells were absolutely never designed or manufacturers are meant to be handled by consumers. They're not consumer products. So, you know, we're not talking here about a vacuum cleaner or a scooter or a laptop. These are other manufacturers products. And, you know, LG Chem had absolutely no control over how laptops and scooters and, you know, all these other products were designed, manufactured, distributed or sold in Hawaii. Yes, there are laptops and scooters in Hawaii, but that has nothing to do with LG Chem. That's not a purposeful contact between LG Chem and Hawaii. And also the, you know, the plaintiff's claims have no relationship to these sales of consumer electronic products and electronic vehicles and things of that nature. So going- If I may interrupt, wouldn't that help to have some jurisdictional discovery? Because we're kind of working in a factual vacuum. We knew what type of batteries are indeed sold, which are, you know, are there certain batteries then that are sold through intermediaries that maybe LG knows, but then reach Hawaii. It seems like we were kind of shooting in the dark here a little bit. Without knowing, having a little bit more facts here. So why should Yamashita get some jurisdictional discovery here? Well, we put in evidence that conclusively demonstrates that the only way that Yamashita's own 18650 cell could have reached Hawaii is through the interlateral actions of third parties, because LG Chem does not sell these products as consumer products. It does not allow- It does not authorize that. So the other problem is that the biggest missing piece in the puzzle here is where Yamashita purchased his 18650 cell. So he chose to leave that out of his complaint. And I can tell you that in every other case where the plaintiff alleges where he purchased, he or she purchased the cell, LG Chem says we have absolutely no connection with that person or entity. And so the way that we figure out how the cell arrived in the forum state is the plaintiff, and this is information that cannot be discovered from LG Chem, this is information that only Yamashita has, where did he purchase this cell? And so from there, you can go to where did that person or entity purchase the cell? It's usually some sort of vaping distributor, which LG Chem also has no relationship with whatsoever. And then eventually, yes, it eventually goes back to an entity in China, which again, LG Chem would have absolutely no connection with. So to the extent there needed to be any more discovery in this case, this is discovery that is solely within the possession of Yamashita, and he chose not to come forward with this information so that meaningful discovery could be conducted. Council, could you respond to Judge Lee's hypothetical? Are we talking about the battery as such or a particular kind of battery or even an ingredient within the battery? I think we're absolutely talking solely about an 18650 lithium ion cell, an individual loose cell, because that's the product that's at issue. And this lawsuit, now there are different models of 18650 cells, but we're not claiming that there are HE4s and MG1s. We're not trying to say that it's only this model of 18650, but I think it absolutely has to be an individual loose 18650 cell, because that's what's at issue in this lawsuit. But the number doesn't really dispose of the issue. What are the characteristics that would distinguish this from any other kind of battery? So 18650 cells are 18 millimeters in diameter, 65 millimeters long, and they're cylindrical. So many of, you know, LG Chem has many, many, many, many different types of lithium ion batteries. They also sell lithium ion battery packs, but because an individual lithium ion battery cell is completely different than say a cell phone battery pack, because a cell phone battery pack has circuitry and it's encased within a hard shell. So that's a completely different product. That's a product that could be, and is meant to be handled by a consumer. An individual industrial lithium ion cell, never meant to be touched by a consumer. So it's two totally different products. And in the, you know, their purpose and in their construction and their use. The other thing is when we're talking about stream of commerce, when a cell is encased inside of a battery pack inside of a consumer electronic device or a vacuum cleaner or a laptop or something of that nature, an electric vehicle, then arguably that product reached the foreign state through the stream of commerce. But the 18650 cell that Yamashita has did, absolutely did not. So Justice Kennedy and Jay McIntyre observed that the stream of commerce refers to the flow of a product from manufacturer to distributor to ultimate retail sale. And aside from that, it's meaning is far from clear. But Justice Brennan and Asahi, the reason that he didn't think there needed to be a plus in the stream of commerce plus, is because he defined stream of commerce as not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacturer to distribution to retail sale. So under this definition, Yamashita's 18650 cell did not reach Hawaii through the stream of commerce. Maybe LG Chem placed it into the stream of commerce, but then somewhere along the way, we have third parties with no connection to LG Chem, diverting this unilaterally, diverting this stream and creating an unauthorized back channel that carried the cell to Hawaii and to Yamashita. So we have two totally separate streams here. So I don't even, I don't think that Yamashita has given any reason for this court to abandon the stream of commerce plus test, but even if it were inclined to do so, this would not fall under any definition of stream of commerce. Let's see what else I have. Yeah. And again, even with this stream of commerce that they're proposing, they're using the flow of consumer electronic devices and other manufacturers products, which LG Chem again had no involvement in manufacturing, designing, advertising, distributing or selling. So that's the flow of products into Hawaii, but that can't be, there's a disconnect between that and what happened in this case. It fails the purposeful availment prong of the test and it also fails the relatedness prong of the specific jurisdiction test. Other than that, unless the court has other questions, I will yield the rest of my time. What specific language in Ford Motor Company would you point to to support your position? Absolutely. So this is quoted at pages 31 and 32 of our answering brief. There are many, many, many, as the court observed and recently observed in L&S Enterprises, there are many, many places in Ford where they were clear that we're talking about Explorers and we're talking about Crown Victorias. Ford makes lots of SUVs and it makes lots of sedans, but we're talking about Explorers and Crown Victorias. So pages 31 and 32 of our answering brief, Ford 141 Supreme Court at 1028. This court specifically contrasted a case which it did not address in which Ford marketed the models in only a different state or region. The court repeatedly emphasized Ford advertised and serviced those two car models in both forum states for many years. Then there's a whole string quote, but in the sum, Ford had systematically served a market in the forum state for the very vehicles that the plaintiffs alleged malfunctioned. And in this case, we have unrebutted evidence that LG Chem did not sell a single 18650 cell in Hawaii during the relevant time period. Thank you. It looks like there are no further questions. Thank you. Mr. Osteen. Ford Motor Company makes clear that it doesn't matter if the product arrived through the unilateral actions of third parties. Imagine that the product that issue had been an engine and a third party took that engine out of a Crown Vic and placed it into a 77 reconstructed Corvette. Still, the court would likely exercise specific jurisdiction over Ford in that case because it doesn't matter whether it came directly arising from Ford's conducts or through the unilateral actions of third parties. Now, we don't know in this case whether the subject battery that Yamashita used had been pulled directly out of the laptop battery that was on the Best Buy shelves in Honolulu. We don't know. Jurisdictional discovery has not been had. And even if we had jurisdictional discovery, it's possible we'll never know. But nonetheless, the fact that it's possible it could have should inform this court to exercise personal jurisdiction. The last thing I want to- Can I ask, I'll give you a little bit of extra time to answer this, but what do you hope to find in jurisdictional discovery? That's a very good question. In jurisdictional discovery, most importantly, we would seek discovery related to LG's imports to Honolulu and how the use of the port of Honolulu provides LG Chem with privileges and benefits of the foreign state of Hawaii. We would seek discovery on the relatedness of the subject lithium-ion battery to LG Chem's other lithium-ion batteries as previously answered by Ms. Staus. The major difference between any of LG Chem's many, many, many, many lithium-ion batteries is the format. One is cylindrical, one is rectangular, one is hard shell, one is soft shell, but they're all the same technology. So the relatedness of these, of the technology- But what's the discovery into the related, I mean, I don't, I mean, it seems like we have to answer the question of under Ford, you know, exactly how do you define the product, but what's, how is discovery gonna help with that? Well, this court would be more informed about what precisely the differences are between one battery and another. Let's say that all of the shipments through the port of Honolulu were rectangular batteries or were battery packs containing cylindrical batteries, or were only solar energy devices using lithium-ion technology. Well, we could look into what exactly the difference in the technology is between those. If, for example, all the batteries by LG Chem are subject to the same defect that arises in this case, then that should give the court more reason to subject LG Chem to specific jurisdiction in this case. Other discovery areas would include the extent of LG Chem's market share, both nationally and in Hawaii, nationwide distribution contracts that might inform the court of the extent of LG Chem's expectation that products would be on the shelves of stores in Hawaii, channels of distribution, of course, and ties between LG Chem and LG Chem America. I mean, it's a little odd to say that you wanna look into their channels of distribution when with respect to the distribution of this particular product, you haven't provided the most relevant information about that, which is where your client bought it, isn't it? Unfortunately, we are in the dark, and that would be one aspect of jurisdictional discovery that might actually help the court. We have no evidence-based theory. He knows where he bought it, doesn't he? He knows where he bought it, but he doesn't know where that battery came from. So at this time, we have no evidence-based theory to say that the product came directly from a laptop battery from Best Buy in Honolulu or from some foreign entity that LG Chem had sold lower quality batteries knowing that it would then be marketed towards the vaping industry. We don't know one way or the other whether this battery at one time or the other was on a shelf in Hawaii at a local retailer. And that would be important for this court to know as related to the earliness problem. However, realistically, I think the Ford decision makes clear that it should not matter whether this battery was at one time on the shelf in Best Buy, so long as it could have been. The most important aspect is that Yamashita's battery could have come through channel distribution in Hawaii that Apalis created themselves. Okay. There are no further questions. Looks like there are not. Thank you. Thank both sides for their helpful arguments and the cases submitted. And that concludes our calendar for the day. Thank you. This court for this session stands adjourned.
judges: O'SCANNLAIN, MILLER, LEE